Good morning, Your Honors. May it please the Court. The last time I had the opportunity to appear before the Ninth Circuit was 27 years ago in an M-Bank argument involving an immigration issue. It will be much nicer to you in an M-Bank court. That's the reason I mention that, Your Honor, is begging for that. The issues in this case are actually in many ways similar to the former case that was just discussed. Here we have the issue of whether or not the judge was justified in reaching an adverse credibility finding. The Court is familiar with the briefs. The case has been argued. However, I think it's a very important thing to keep in mind that when Mr. Philobos initially had his application prepared for asylum, that it was prepared by some agency, not a government agency, not a law firm, but essentially the equivalent to the notario publico filling out applications for people, generally kind of rubber stamp standard applications. What facts would be applicable to any Coptic Orthodox coming from Egypt at that point in time? Mr. Philobos had limited English ability at that point. He had been in the United States a relatively short period of time. Let me ask you about language. Did the client indicate on the record before the IJ that, A, he had difficulty with the English language? I specifically don't know, Your Honor. Let's assume that he did for the purpose of the next part of the question, which is, on the record, did he say now that my responses have been accurately translated to me, the document preparer got it wrong? That's not what I said. Did your client say that? What he did say is that at the time this document preparation service, or whatever we should call it, prepared the application that he answered, and in all questions that were asked of the preparers for him. My question is different, and it's purposefully different. Let me explain why. I sat on a panel three, four months ago that involved an individual who had said, A, I have great difficulty with English language. B, now that a very good translator has translated to me what my answers were on that application form, they're entirely inaccurate. And C, the document preparer has a history of being sanctioned by courts as a notorious inaccurate document preparer. Now, as far as I can tell, none of those three things are present here. Is that right? I believe that is correct. His knowledge of the English language changed at the time he went to his asylum interview. But the questions here are like, have you ever personally been subject to persecution? And on the application form, he says no. Right. And gives a sentence or two explanation. However, as his English improved, as he was able to get the documentation, as he personally was finally able to communicate the basis of his claim. And after years having passed, the ability of understanding and learning and comprehending the English language. At that point, he was able to not only submit his testimony, but corroborating evidence to his testimony. So when the answer on the form to the question, have you ever been subject to persecution was no. But you need not take direct action if you were a Christian in Egypt to be subject to persecution by the Muslim majority there. At the hearing, when he was asked, he described in detail several incidents where he personally had been persecuted by Muslims. And that submitted corroborating documentation. Why? What was wrong with the IJ saying I can't reconcile those two things and they go right to the heart of the claim? Because the immigration judge in this particular matter assumed and jumped to the conclusion that if a preparation service does that for a living, then they must have asked or inquired specifically of Mr. Phyllis as to whether or not these events occurred. The client, Mr. Phyllis, the petitioner, denies that that occurred. That when he was specifically asked the questions, once he could comprehend those before the immigration judge. And I might add that his asylum interview prior to the notice to appear that at that time he answered the questions honestly, truthfully, credibly, and supported his allegations and his claims with supporting documentation. At the time, the finding of the immigration judge was to assume that a preparation agency, whether they're practicing law without a license, whether they're qualified or not qualified, that because they did that for a living, therefore they would have asked the relevant questions and that application would in fact have been complete. The application prepared in English, the client not speaking or comprehending English at that point in time. The question is whose answers, whose answers were on the initial I-589 request for asylum? Did he have an interpreter with him at that time? No, he did not. The first time that he had the opportunity to present evidence in regard to his own personal life experience was at the asylum interview prior to his appearance before the immigration judge. And at that interview, the testimony was consistent with the testimony before the immigration judge. Is there proof of that in the record? Ordinarily, asylum officers don't take a transcript. That is correct. They may take notes. That is correct. It's not unusual for asylum officers to testify at the IJ hearing. Usually they're being called by the government, but I suppose there's nothing to prevent the petitioner from doing it. Did the asylum officer here testify? No, he did not. Were his notes admitted? I do not believe so, Your Honor. Our representation of the client did take place subsequent to the denial of the Board of Immigration Appeals. I understand that. Is there anything in the record that would substantiate your statement that the content of his interview before the asylum officer was consistent with his IJ testimony? I do not know of anything on the record. Was he asked about that at the IJ hearing? No, he was not. Did you want to save a little time? Yes, please. Thank you very much. I hope this was more pleasant than the last time. Absolutely. Okay. Ms. Farrier? Good morning again. I'm Cindy Farrier, representing the government in this matter. Just to answer the Court's question with regard to notes about the asylum interview, I don't believe that those are in the record anywhere. The immigration judge is generally looking at the case de novo for the first time without benefit of the asylum officer's notes, unless they are introduced and the asylum officer testifies about that. If it's true that Mr. Falobos did not understand the nature of the questions that were being asked of him or the actual questions on the asylum application at the time that he completed the application, it still does not explain as to why he solemnly swore before the immigration judge at his hearing that the information that he had placed on his application for asylum and withholding of deportation was true and correct. Where is that? That's pretty perfunctory, isn't it? Doesn't that happen virtually at the get-go of every IJ hearing? Correct. The IJ holds it up and says, this is your application, is it correct, etc., fine, boom, go. Yes. That's the administrative record, page 72. 72? Yes. But he was also asked at the same time, so as to the asylum application, are there any changes, additions, or corrections? The attorney for the petitioner at the time, because he was represented by counsel, who presumably would have explained the asylum application to him, said, Your Honor, I believe his address has changed, but that's all. So the immigration judge then was rightly justified in determining that it was significant that these two contradictory statements with regard to his testimony and his lack of any mention of the four incidents in his asylum application went to the heart of his asylum claim. Well, the immigration judge, to his credit, starts asking, what is your explanation? Correct. That's at page 113 on the record? Yes. It's the first time anybody's asked him for an explanation. And he starts to explain it, that they just asked for my name. You look over at 114. It's an office. And they need to, they fill out the form. All they ask is the name and the address. And then the I.J. cuts him off. Well. Why does the I.J. cut him off as he launches into the explanation? I'm not certain if he had anything more to offer. Well, he's interrupted in mid-sentence, according to the transcript. Have you looked at it, 114? It's at the very top of 114. It might dribble over from 113. Line 8 from 114. Well, he doesn't offer, I mean. Well, now, wait a minute. We have his testimony here. All they ask is the name and address. Right. The immigration judge, in her decision, notes that she doesn't find that explanation to be sufficient or adequate. Well, why isn't it? Because she says that even noting, even if you were to consider that that's true, that they just asked general questions. No, they ask the name and address. That's all he says. And then they fill it out. That's their business. They fill out the form. But, again, he alleged that he didn't ever allege at the beginning of his hearing that the asylum application was falsely prepared. No, he didn't. No, he did not. You're perfectly correct. But when the IJ started to get into it, he did begin to, he did give an explanation, which, on the face of it, if you look at it realistically, you know these places that fill out forms aren't interested in the person's story. My goodness, they're going to waste time. They know what the general allegation should be. And may I follow up on that? How does the IJ know that these people would ask a lot of questions? What basis did he have for guessing that? Did she have for guessing? I'm sorry, what? What basis did the IJ have for guessing that this application office would know what questions to ask? Because the nature of the petitioner's response was that he went to an office where they prepared these sort of applications. Right, but what about that gives you any confidence that they are going to go into his story? Well, because the application would be there before him, the answers that were... But if you know their business, it's just to make all the money out of immigrants. But the petitioner never claimed, there's no place in the record that the petitioner claimed that this was an Atario service. He does say that they ask him general questions, but the immigration judge... No, what he says is they ask my name and address. There was an and there that he didn't get to. He never got these cut off. I'm sorry, at pages 95 and 96 of the record, the immigration judge later was following up on the earlier questions. Okay, what do we got at 95 and 96? At 95 and 96, I believe that it is the cross-examination of petitioner where they're asked, the INS trial attorney is asking about...  Right, and he indicates that he knows that those events are not on his asylum application. And then at the very bottom of the page, at line 2425, he says the application does not consist of any of those incidents. The application consisted of just answering questions about when did I come here and the reason why I came here. And those were like general information, not specific ones. Well, that's pretty consistent. It is consistent, but he also mentions the fact that they ask him, why did you come here? When did you come here? And all of those questions then, I mean, it appears if you were applying for asylum and you were an immigrant, that you would at least know that the basis for asylum is mistreatment generally in your country. How would you know that? How would you know that? Unless you had a lawyer. He did have a lawyer later before the immigration judge. No, but how does he have a lawyer? At the time he's answering those questions, how does he know on what basis we grant refuge? Well, I think that immigrants actually are somewhat sophisticated in the sense that they generally... He was an educated man. You're guessing, which is like the IJ. I don't know why we don't send this back and give him a full hearing and have the opportunity to explain in full exactly what went on in that application office. Well, I believe... The IJ cut him off arbitrarily, didn't he? No, I do not agree with that. I believe that the IJ was following... Does he cut him off in his sentence? The IJ was following up on earlier questions. Well, we look at 114 in his answer. All they ask is the name and the address and. Dot, dot. Right, and I believe... Doesn't the IJ cut him off? The IJ does, but I don't believe that she didn't elicit a full answer in the sense that... Well, was there more to be said or not? I do not know. You don't know and she didn't know. Okay, even assuming that the immigration judge did cut him off. Again, I get back to the point that before the immigration judge, he was represented by an attorney. The attorney did take time to correct certain things on the application, but didn't correct the fact that he failed to mention four incidents which led to his asylum claim. I don't know if you ever get involved in education of lawyers who try these cases at the IJ level or with IJs, but this transcript of 114 is a good example of where an IJ cut off an answer, the content of which may have helped the government. Correct, yes. Okay. Yeah, we could have had, again, a fuller record. Okay. Thank you for your argument. Rebuttal? Okay, thank you. The case just argued will be submitted for decision. We'll proceed to the next case on the calendar, which is the United States against Roosevelt Kyle. If counsel will come forward, you'll let us know about that official date. Yes. Okay, thank you. Before you start the argument, the court grants the government's motion to dismiss its cross-appeal. Thank you. Thank you. Counsel? Good morning, Justice.
judges: Noonan, Thompson, Hawkins